**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| MARY DOWDELL<br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>    Respondent. | Criminal Action No. 3:07-cr-00010<br><br>By:   Michael F. Urbanski<br>         United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Mary Ellen Dowdell ("Dowdell") filed this 28 U.S.C. § 2255 motion challenging her conviction and sentence of sixty months for conspiracy to commit wire fraud. Dowdell maintains that counsel provided ineffective assistance on several grounds. Additionally, Dowdell asserts that the government withheld potentially exculpatory information in violation of its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and that her Fifth Amendment rights to Due Process and Equal Protection were violated. By Order dated January 25, 2011, the court referred all dispositive motions to the undersigned for proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned finds that Dowdell's claims have no merit and **RECOMMENDS** that Dowdell's § 2255 motion to vacate, set aside or correct her conviction and sentence be **DISMISSED**.

**I.**

In April 2007, a Grand Jury sitting in the Western District of Virginia, Charlottesville Division, returned a multi-defendant superseding indictment charging Dowdell with conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 371. Dowdell's indictment resulted

from federal investigations surrounding a Ponzi scheme operated by her husband, Terry Dowdell. Terry Dowdell eventually pled guilty to securities and wire fraud charges. During Dowdell's trial, the government established that "the assets of Dowdell's husband, Terry, and his alter-ego, Vavasseur Corporation, were frozen continuously from November 19, 2001," and that various transfers involving funds subject to the orders freezing Terry Dowdell's assets were made to Dowdell "personally, to her company, Willowood, and to the credit card account held by the Dowdells." United States v. Dowdell, Nos. 08-4299, 08-4300, 08-4308, 2009 WL 20872, at *1 (4th Cir. Jan. 5, 2009). Furthermore, the government demonstrated Dowdell's personal involvement in cashing these checks, issued to her by other defendants. Id.

A jury found Dowdell guilty of conspiracy to commit wire fraud, and the court sentenced her to a total of sixty months incarceration. Dowdell appealed, challenging her conviction and sentence. The United States Court of Appeals for the Fourth Circuit affirmed Dowdell's conviction and sentence on January 5, 2009. Id.

Dowdell filed this motion for relief pursuant to 28 U.S.C. § 2255 on November 2, 2009, claiming that her counsel, David A. Eustis ("Eustis"), was ineffective in failing to: (1) investigate potentially mitigating evidence; (2) present admissible character evidence; and (3) put forth a viable defense. Furthermore, Dowdell contends that she is entitled to relief based on the following: (1) that the government withheld potentially exculpatory information in violation of its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and (2) that her Fifth Amendment rights to Due Process and Equal Protection were violated.

## II.

In her § 2255 motion, Dowdell raises several claims of ineffective assistance of counsel. However, the undersigned finds that none of her claims meet both the performance and prejudice

prongs of Strickland v. Washington, 466 U.S. 668 (1984), and **RECOMMENDS** that they be **DISMISSED**.

Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland, 466 U.S. at 687-88. To establish ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's defective performance prejudiced the defendant, and the errors were so serious as to deprive the defendant of a fair trial. Id. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. As such, there is a "strong presumption that counsel's performance falls within a wide range of reasonable professional assistance." Id. To establish prejudice, a defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

In the instant case, a review of the record reveals that Dowdell cannot satisfy both the performance and prejudice prongs under Strickland. The petitioner "bears the burden of proving Strickland prejudice." Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983)). If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290 (citing Strickland, 466 U.S. at 697). Because Dowdell cannot establish that any of her three claims of ineffective assistance of counsel affected the outcome of the proceeding, the undersigned **RECOMMENDS** that her claims be **DISMISSED**.

3

## A.

First, Dowdell asserts that Eustis provided ineffective assistance by failing to investigate potentially mitigating evidence. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. "Although counsel should conduct a reasonable investigation into potential defenses, Strickland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." Tucker v. Ozmint, 350 F.3d 433, 442 (4th Cir. 2003) (quoting Green v. French, 143 F.3d 865, 892 (4th Cir. 1998)). "Once counsel conducts a reasonable investigation of law and facts in a particular case, his strategic decisions are 'virtually unchallengeable.'" Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009) (quoting Strickland, 466 U.S. at 690).

Specifically, Dowdell contends that "[h]ad counsel properly investigated[,] he would have identified numerous well-respected individuals, many professionals, who could testify that Petitioner's focus in life was so centered on, and she was so dedicated to[,] the needs of the disadvantaged of her community." Petitioner's Motion [hereinafter Pet. Mot.] at 20. Furthermore, Dowdell asserts that "such testimony would cast reasonable doubt on the prosecution's circumstantial claims that Petitioner knew, or should have known[,] of the fraud scheme perpetrated by her husband." Id. However, "bare allegations do not suffice: 'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993) (quoting United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989)). Dowdell fails to identify the specific

4

individuals such an investigation would have produced and how it would have affected the outcome of her trial.

Dowdell acknowledges that information regarding her involvement in the community, coupled with the fact that she dedicated numerous hours each week to her volunteer efforts, was made available to Eustis both orally and in writing. Pet. Mot. at 21. Eustis' affidavit demonstrates that his decision not to focus on Dowdell's community involvement as a defense related to trial strategy and not trial preparation. See Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). In his affidavit, Eustis states that he was aware of Dowdell's volunteer efforts but was "convinced that he advanced a defense far superior, and one with a greater likelihood of success." Eustis Affidavit at 4. In light of the fact that Dowdell had ample time to commit the alleged criminal acts, which "would have consumed very little time," Eustis chose to put forth the following defense: "that the government's evidence would fail to establish that [Dowdell] had engaged in specifically delineated criminal acts." Eustis Affidavit at 2, 3. As such, counsel's decision was made according to his reasonable professional judgment and does not fall below an objective standard of reasonableness.

Furthermore, "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." United States v. Nersisian, 824 F.2d 1294, 1321 (2d Cir. 1987). In his affidavit, Eustis states:

> Pre-trial counsel interviewed/investigated numerous persons, including but not limited to, all government witnesses that testified at trial either directly or through their attorneys, Terry Dowdell, Terry Dowdell's lawyer, FBI SA J. Lamb, the principal lawyer for the SEC, and numerous potential witnesses who did not testify at trial, sometimes through their counsel. Counsel engaged in a 'discovery' process separate from and in addition to the extensive discovery that the

5

> government provided. The case required reviewing a large number of documents including trial transcripts and lengthy depositions, including petitioner's deposition. Counsel so reviewed these and more, diligently.

Eustis Affidavit at 3. Eustis' decision not to call certain "well-respected individuals" that Dowdell asserts could testify as to her community involvement was a tactical decision and not a result of inadequate investigation on the part of counsel. In light of this and all of the other testimony and evidence presented at trial, Dowdell has failed to demonstrate that Eustis' conduct fell below an objective standard of reasonableness. Accordingly, the undersigned finds that Dowdell's claim fails and **RECOMMENDS** that the claim be **DISMISSED**.

**B.**

Second, Dowdell asserts that Eustis was ineffective in failing to present Rule 404 character evidence. Specifically, Dowdell argues that, "[h]ad counsel presented evidence demonstrating Petitioner's exceptional character during her half-century of life, when coupled with the evidence confirming the exhaustive volunteer and business schedules Petitioner maintained, reasonable doubt as to [Dowdell's knowledge of the fraud scheme] would have been created in the jury's mind." Pet. Mot. at 24.

In the instant case, Eustis chose not to offer FRE 404 character trait evidence because he reasonably concluded that such evidence would detract from Dowdell's principal defense. See Eustis Affidavit at 2 ("Offering FRE 404 character trait evidence would not have bolstered petitioner's principal defense; to wit: that the government's evidence would fail to establish that petitioner had engaged in specifically delineated criminal acts.").

> Effective counsel in a given case may consider the introduction of character evidence to be contrary to his client's interest. In other cases he may consider it unlikely to make much difference. In certain cases he may conclude that although available testimony might be minimally helpful, it would detract from the impact of another approach that he considers more promising.

6

Stanley v. Zant, 697 F.2d 955, 970 (11th Cir. 1983). Furthermore, counsel's failure to present character testimony is not objectively unreasonable where there lies an "inherent risk of unfavorable character evidence being offered in rebuttal." Garcia v. Schriro, No. 05-16508, 2006 WL 988920, at *1 (9th Cir. Apr. 12, 2006). In his affidavit, Eustis explains that FRE 404 character trait "evidence would detract from the principal defense and, in turn, would allow the government to reply on the issue of any pertinent character traits. This would have been a mistake." Eustis Affidavit at 2.

Rather than offering FRE 404 character evidence and thus, opening the door to rebuttal evidence from the government, Eustis made a tactical decision to present evidence of Dowdell's charitable activities in the form of her own testimony. Dowdell testified as to "her history of charitable employment," as well as "her limited knowledge of her husband's business." Id. The fact that Eustis presented this evidence in the form of Dowdell's testimony relates to trial strategy. See Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). Accordingly, the undersigned finds that Dowdell has not demonstrated that Eustis' representation fell below an objective standard of reasonableness and, thus, **RECOMMENDS** that the claim be **DISMISSED**.

**C.**

Third, Dowdell asserts that Eustis was ineffective in failing to put forth a viable defense. Specifically, she contends that Eustis failed to present any "defense theory of substance." Pet. Mot. at 27. Dowdell argues that Eustis should have developed a defense theory that included the following: "(1) Petitioner could not have known of the conspiracy because her entire attention was elsewhere; (2) Petitioner did not turn a blind-eye to her husband's illegal activities because

of her all-consuming business and charitable activities; (3) Petitioner, like the financially sophisticated clients her husband victimized, was conned by Terry Dowdell; and (4) without knowledge of either the conspiracy, or the underlying fraud scheme, Petitioner could not have voluntarily joined the conspiracy." Id.

Because "there are countless ways to provide effective assistance in a given case . . . even the best criminal defense attorneys would not defend the particular client the same way." Strickland, 466 U.S. at 689. "Among the 'virtually unchallengeable' tactical decisions left to the judgment of trial counsel are determinations regarding the defense strategy adopted at trial." Gluzman v. United States, 124 F. Supp. 2d 171 (S.D.N.Y. 2000) (citing United States v. Simmons, 923 F.2d 934, 956 (2d Cir. 1991)). "To succeed in [an] ineffective assistance of counsel claim, [Dowdell] must overcome the presumption that the challenged action may be considered an appropriate and necessary trial strategy under the circumstances." Bell v. Evatt, 72 F.3d 421, 429 (4th Cir. 1995) (citing Strickland, 466 U.S. at 690).

In the instant case, there were numerous reasons why Eustis chose not to focus on the time and energy Dowdell spent on her charitable activities as a defense. First, the alleged criminal acts "constituted co-signing a corporate check over which petitioner had signatory authority as secretary of the corporation, negotiating five checks at a local bank, and two Visa payments." Eustis Affidavit at 3. These "acts, whether criminal in nature or not, would have consumed very little time." Id. Because co-signing a corporate check or negotiating a check at a local bank only has a negligible impact on one's schedule, Eustis instead chose to focus on attacking "as a matter of law and where relevant as matters of fact, every element of the offense." Id. at 4. Second, Eustis thought that focusing on the time and energy Dowell spent on her charitable activities would only serve to alienate the jury. In his affidavit, Eustis emphasized

that his decision was based upon an "obligation to achieve and maintain credibility with the jury."  Id.  In light of Eustis' meetings with Dowdell and his investigation of numerous actual and potential witnesses, it was reasonable for Eustis to believe that a jury would be skeptical of an argument that Dowdell lacked the ability to participate in the conspiracy due to her "all-consuming business and charitable activities."  Pet. Mot. at 27.

Dowdell's defense centered around her own testimony that she lacked knowledge as to where the money was coming from and thus, had no reason to think she was doing anything improper.  November 29, 2007 Trial Transcript of Mary Dowdell's Testimony [hereinafter Dowdell Trial Tr.] at 11.  At trial, Dowdell did not dispute the fact that she received and cashed certain checks after the asset freeze.  Id. at 24-27.  As such, Eustis was not deficient in choosing not to argue that because most of Dowdell's time and energy were spent elsewhere, she could not have voluntarily joined the conspiracy.  He made a tactical decision to focus on "a defense far superior, and one with a greater likelihood of success, to the approach suggested in the petition."  Eustis Affidavit at 4.  Accordingly, the undersigned finds that Dowdell's claim fails and **RECOMMENDS** that her claim be **DISMISSED**.

## III.

In her § 2255 motion, Dowdell asserts that the government withheld potentially exculpatory information in violation of its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and that her Fifth Amendment rights to Due Process and Equal Protection were violated.  However, the undersigned finds that none of these claims have merit and **RECOMMENDS** that they be **DISMISSED**.

**A.**

Dowdell asserts that the government failed to disclose potentially exculpatory evidence as required under Brady, resulting in a violation of her Fifth Amendment right to due process. Specifically, Dowdell contends that she "has learned of information offered to the government by at least two codefendants [who] disclosed it was an inflexible principle demanded by Terry Dowdell that business was never to be discussed in [her] presence." Pet. Mot. at 36. For its part, the government asserts that "[w]hile Terry Dowdell may have tried to create the impression that the Petitioner was not involved in his fraud schemes, this evidence cannot be reasonably considered to undermine confidence in the verdict." Government's Memorandum [hereinafter Gov't Mem.] at 11. Additionally, the government contends that "it complied with all Brady obligations and turned over any and all potentially exculpatory evidence in this case." Id.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Vinson v. True, 436 F.3d 412, 420 (4th Cir. 2006) (quoting Brady, 373 U.S. at 87). "Evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Campbell v. Polk, 447 F.3d 270, 276 (4th Cir. 2006) (quoting Kyles v. Whitley, 514 U.S. 419, 433-34 (1995)). "To succeed on a Brady claim, the accused must prove that the evidence suppressed is favorable to him, either because it is exculpatory or because it has some impeaching value; that the prosecution suppressed the evidence; and that prejudice resulted from the suppression." Vinson, 436 F.3d at 420.

In the instant case, Dowdell has failed to demonstrate that the allegedly undisclosed evidence was material and resulted in actual prejudice. First, there is overwhelming evidence of

Dowdell's guilt. Dowdell testified that she not only received and cashed certain checks, but also knew at the time that all of Mr. Dowdell's assets were frozen. Dowdell Trial Tr. at 22-27. These checks included a $512,000 check on November 20, 2001 to move money from an account on which her husband was a signator to one in which he was not; a $6,785 check for her company, Willowood Design Corporation, on January 30, 2002; a $5,000 check on April 30, 2002; and a $5,000 check on July 18, 2002. Id. at 22-26. All of these transactions involved funds subject to the orders freezing Terry Dowdell's assets, and were made to Dowdell personally, to her company, and to the Dowdells' credit card account. Id.

Second, "the allegedly undisclosed evidence would have provided little, if any, independent support to [Dowdell's] defense." Campbell, 447 F.3d at 276. Dowdell's testimony shows not only that she was involved in the $512,000 transfer made on the day after the asset freeze but also knew that these funds were associated with her husband. Dowdell Trial Tr. at 27. Thus, Dowdell's own testimony demonstrates that any evidence indicating that Terry Dowdell never discussed business in his wife's presence would not have affected the outcome of the proceeding. In order to acquit Dowdell, the jury would have "had to pile inference upon inference for this evidence to make [Dowdell's] theory of the case . . . more credible." Campbell, 447 F.3d at 276. Even if true, such evidence would not have made the difference between conviction and acquittal. There was overwhelming evidence of Dowdell's guilt, and the government clearly established her personal involvement in cashing these checks. Thus, any evidence of discussions, or the lack thereof, between Dowdell and her husband is not material because the alleged statements have no bearing on Mary Dowdell's participation in the fraud scheme. Thus, Dowdell's assertions are insufficient to allege a Brady violation. Accordingly,

the undersigned finds that Dowdell's claim has no merit and, therefore, **RECOMMENDS** that her claim be **DISMISSED**.

**B.**

Dowdell asserts that her Fifth Amendment right to equal protection was violated. Specifically, Dowdell claims that "she has suffered intentional, irrational, and arbitrary discrimination." Pet. Mot. at 40. She contends that she was treated as a "class of one" because "no other wife, uninvolved in the business operations of her fraudster husband, has been indicted in the decade's spate of various business scams." Id. In response, the government "submits that [Dowdell's] claim is somewhat analogous to a selective prosecution claim." Gov't Mem. at 12. The undersigned finds that Dowdell's claim is properly analyzed under such a framework and **RECOMMENDS** that Dowdell's claim of selective prosecution be **DISMISSED**.

Dowdell asserts that "she was singled out as a 'class of one' by virtue of her indictment and prosecution." Gov't Mem. at 12. However, as the government notes, "the authority provided by the Petitioner regarding the 'class of one' doctrine is a civil case dealing with a property dispute." See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2002) (recognizing "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"). The government cites a recent employment discrimination case in which "the Court noted that the 'class of one' doctrine was developed in order to protect individuals who did not allege class-based discrimination, but instead claimed that they were irrationally singled out." Gov't Mem. at 12 (citing Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 601 (2008)). In Engquist, the Court acknowledged that "[t]here are some forms of state action . . . which by their nature involve discretionary decision making based on a

vast array of subjective, individualized assessments . . . . In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." Engquist, 553 U.S. at 603.

"[T]he decision to prosecute a particular criminal case may not be based upon an 'unjustifiable' factor such as race, religion, or other arbitrary classification." United States v. Hastings, 126 F.3d 310, 313 (4th Cir. 1997) (citing United States v. Armstrong, 517 U.S. 456, 464 (1996)). "It is appropriate to judge selective prosecution claims according to ordinary equal protection standards. Under our prior cases, these standards require petitioner to show both that the passive enforcement system had a discriminatory effect and that it was motivated by a discriminatory purpose." Wayte v. United States, 470 U.S. 598, 608 (1985) (citations omitted). "Unless a defendant provides 'clear evidence' to overcome the presumption that a government prosecutor has acted lawfully and without discrimination ─ a 'particularly demanding' standard ─ he cannot demonstrate a constitutional violation for selective prosecution." United States v. Passaro, 577 F.3d 207, 219 (4th Cir. 2009).

Dowdell fails to set forth specific facts supporting her claim of selective prosecution and thus, is unable to establish a prima facie case for selective prosecution. See United States v. Richardson, 856 F.2d 644, 647 (4th Cir. 1988) ("A defendant . . . must set forth specific facts supporting his selective prosecution contention and may not rest on bald assertions of constitutional violations."). Dowdell merely cites the fact that the wives of other fraudsters, including Ruth Madoff, were not prosecuted. However, this fact alone does not demonstrate an impermissible basis for the charging decision in the instant case. Because a charging decision is a subjective, individualized decision, it cannot be challenged on that basis alone. Gov't Mem. at 13. Accordingly, the undersigned finds that Dowdell's challenge to the charging decision in this

13

case has no merit, and, therefore, the undersigned **RECOMMENDS** that her claim be **DISMISSED**.

## C.

Finally, Dowdell asserts that her right to due process was violated, arguing that prosecutors engaged in sentencing manipulation. Pet. Mem. at 49. Specifically, Dowdell contends that although she was charged "in the Indictment with seven predicate acts totaling $42,500.00 . . . [c]onspicuously missing from the Indictment was the purported November 20, 2001, act which prosecutors utilized to increase Petitioner's sentence at her sentencing." Id. Dowdell argues that "the government's failure to indict on the $512,000.00 transaction, only to then utilize the transaction . . . to substantively increase the amount of time Petitioner was to lose her liberty, clearly violated her right to due process." Id. at 49-50. Essentially, Dowdell claims that her sentence violates the rule of Apprendi v. New Jersey, 530 U.S. 466, 490 (2000): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt."

In response, the government asserts that it "is not required to list every single act in furtherance of a conspiracy in the indictment." Gov't Mem. at 14. Furthermore, the government notes that the "elements of a crime of conspiracy to commit wire fraud do not contain a threshold monetary value" and that the "underlying crime of wire fraud does not have a threshold monetary loss." Id. at 14-15. Accordingly, "the amount of loss is relevant to the sentencing hearing, at which a preponderance standard applies." Id. at 15.

In addressing the issue of whether the Due Process Clause requires the district court to find facts supporting sentencing enhancements by more than a preponderance of the evidence,

the Fourth Circuit noted, "[a]lthough the Third Circuit has required proof by clear and convincing evidence in certain cases prior to *Booker*, it held unequivocally in *Fisher* that the post-Booker advisory nature of the Guidelines eliminates any due process argument for a heightened standard of proof at sentencing." United States v. Grubbs, 585 F.3d 793, 801 (4th Cir. 2009) (citing United States v. Fisher, 502 F.3d 293, 308 (3d Cir. 2007)). The court pointed to the following language in support of its conclusion that the Due Process Clause does not require the district court to find facts supporting sentencing enhancements by more than a preponderance of the evidence:

> Insofar as Booker rendered the Guidelines advisory[,] we reasoned that "the maximum legislatively authorized punishment to which the defendant is exposed is no longer the maximum prescribed by the Guidelines; instead, it is the maximum prescribed by the United States Code." Because "[n]one of the facts relevant to enhancements or departures under the Guidelines can increase the maximum punishment to which the defendant is exposed," we explained that they need not be proven by a reasonable doubt. We concluded: "Under an advisory Guidelines scheme, district courts should continue to make factual findings by a preponderance of the evidence and courts of appeals should continue to review those findings for clear error."

Id. (quoting Fisher, 502 F.3d at 305). Furthermore, "[s]entencing courts continue to exercise their long-standing authority to hear the evidence, and consider any evidence at sentencing that 'has sufficient indicia of reliability.'" Id. at 802. Thus, after Booker, "the due process clause does not require the district court to find uncharged conduct by a heightened standard of proof before using it as a basis for determining a defendant's sentence." Id. Because the district court is not required to apply a heightened standard of proof to uncharged conduct for sentencing purposes, Dowdell's claim that prosecutors manipulated her sentence must fail.

Dowdell also contends that the use of the two-point enhancement for obstruction of justice violated her right to due process. Pet. Mem. at 54. She claims that she was penalized "for exercising her constitutional right to testify in her own defense." Id. Furthermore, Dowdell

15

argues that the district court's comments concerning its belief that she testified falsely at trial violated her due process rights because claimed perjury at trial "is a new purported crime which due process requires be charged, and proven to a jury beyond a reasonable doubt." Id. at 57.

A sentencing court may "increase a defendant's offense level by two levels if the defendant 'willfully obstructed or impeded . . . the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction.'" United States v. Sun, 278 F.3d 302, 313 (4th Cir. 2002) (quoting U.S. SENTENCING GUIDELINES MANUAL § 3C1.1 (2009)). "For a sentencing court to apply the obstruction of justice enhancement based on perjury, the sentencing court, by a preponderance of the evidence, must find three elements: (1) the defendant gave false testimony, (2) concerning a material matter, (3) with the willful intent to deceive (rather than as a result of confusion, mistake, or faulty memory)." Id. at 314. However, "the obstruction of justice enhancement does not 'automatically apply every time a defendant who testifies at trial is convicted.'" Id. (quoting United States v. Smith, 62 F.3d 641, 647 (4th Cir. 1995)).

At Dowdell's sentencing hearing, the district court stated:

With regard to the obstruction, I remember her testimony. It was unbelievable. It was almost insulting in a way, that she would testify. Her testimony was so contrary to human experience, how people react to things. I think she did commit perjury during the trial. I mean, just to totally deny any wrongdoing in the case whatsoever and basically, I guess you could say, she deliberately turned a blind eye to everything that was going on, but she had to know.

March 3, 2008 Sentencing Transcript at 30. The district court made it clear that Dowdell's statements on the stand were both intentionally false and material to the question of guilt. Dowdell denied any involvement in the offense in spite of the strength of the government's evidence concerning her participation in the conspiracy. The court emphasized that in light of Dowdell's involvement in the financial dealings of the business, "there's just no way she could

16

have felt she was innocent." Id. In judging Dowdell's credibility, the court stated its belief that she had committed perjury. Recognizing Dowdell's "continuing role" in the offense, the court concluded that Dowdell intentionally deceived the court. Id. This finding served as a basis for the use of the two-point enhancement for the obstruction of justice. Accordingly, Dowdell's challenge to the obstruction of justice enhancement has no merit, and therefore, the undersigned **RECOMMENDS** that her claim be **DISMISSED**.

## IV.

Based on the foregoing, the undersigned finds that Dowdell has failed to establish that counsel provided constitutionally deficient legal assistance. Dowdell has also failed to demonstrate that the government withheld potentially exculpatory information in violation of its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and that her Fifth Amendment rights to Due Process and Equal Protection were violated. Accordingly, the undersigned **RECOMMENDS** that Dowdell's § 2255 motion to vacate, set aside or correct her conviction and sentence be **DISMISSED**.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to plaintiff and counsel of record.

Entered: May 3, 2011

/s/ Michael F. Urbanski

Michael F. Urbanski
United States Magistrate Judge